P- send

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 1 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Juan Heredia Monarrez, | Case No. SACV 03-00104-AHM (MLG) |
|     Petitioner, | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
|     v. | |
| Edward Alameda, Warden, | |
|     Respondent. | |

## I.   Procedural History

On May 12, 1999, Petitioner Juan Heredia Monarrez was convicted, following a jury trial in the Orange County Superior Court, of attempted premeditated murder, street terrorism, and two firearms violations. The jury found also found true a variety of enhancement allegations including: a gang enhancement; prior serious felony and prior prison term enhancements; and a personal infliction of great bodily injury enhancement. He was sentenced to life imprisonment, to be followed by a term of 13 years. On November 6, 2001, the California Court of Appeal affirmed the convictions and sentences. On January 23, 2002, the California Supreme Court, denied his

DOCKETED ON CM

APR 1 3 2006

BY                    040

1  Petition for Review. (Lodgment 3).

2      On February 2, 2003, Monarrez filed this petition for writ of
3  habeas corpus.  The petition raised five grounds for relief.  The
4  first four grounds for relief challenged certain of the trial court's
5  evidentiary rulings: (1) the trial court wrongly admitted evidence
6  of other criminal acts; (2) the trial court wrongly excluded the
7  victim's medical records; (3) the trial court wrongly admitted expert
8  testimony on gangs and efforts to intimidate witnesses; and (4) the
9  trial court wrongly admitted evidence of Monarrez's tattoo of a man
10  holding a gun.  The final ground for relief asserted that there was
11  insufficient evidence from which a reasonable juror could find
12  premeditation or that the victim suffered great bodily injury.  All
13  of these claims had been presented to the California Supreme Court.
14  However, the first four grounds for relief had only been presented
15  as state evidentiary errors.

16      On March 12, 2003, Respondent filed a motion to dismiss the
17  petition, alleging that none of these claims were exhausted as they
18  had not been raised as federal Constitutional claims in the state
19  courts.  On May 6, 2003, this Court issued an order finding that
20  grounds one through four were unexhausted because the issues had not
21  been federalized in the application for review presented to the
22  California Supreme Court, but that ground five, the insufficiency of
23  the evidence claim, was fully exhausted.  With the Court's
24  permission, Petitioner then amended the petition to delete grounds
25  one through four.  The Court also granted Petitioner's request to
26  stay proceedings on the single exhausted claim while he exhausted the
27  withdrawn claims in state court. Petitioner filed his first amended
28  petition containing only the insufficiency-of-the-evidence claim on

1  June 4, 2003.

2     Petitioner then filed a petition for writ of habeas corpus in

3  the California Supreme Court.   That petition contained the same

4  claims that had previously been presented, but included citations to

5  federal constitutional provisions and case law in an attempt to

6  federalize the claims for subsequent habeas review in this court.

7  The California Supreme Court denied the petition for writ of habeas

8  corpus on March 30, 2004, citing *In re Dixon* 41 Cal.2d 756 (1953)

9  (state collateral review precluded when matters in habeas petition

10  could have been, but were not, raised on direct appeal) and *In re*

11  *Waltreus*, 62 Cal.2d 218 (1965) (claims raised on direct appeal cannot

12  be reviewed on habeas).

13     Petitioner then requested leave to amend his petition to include

14  the newly exhausted grounds one through four.   On May 13, 2004, the

15  Court granted Petitioner's motion to incorporate these four

16  additional allegations of error into the June 4, 2003 first amended

17  petition.[1]   On August 12, 2004, Respondent filed another motion to

18  dismiss the petition, claiming: 1) that the petition was now untimely

19  under the one-year statute of limitations contained in the

20  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

21  U.S.C § 2244(d)(1)(A); 2) that the newly raised claims remained

22  unexhausted; and 3) that the newly raised claims were procedurally

23  barred based on the decision of the California Supreme Court denying

24  the state habeas corpus petition on the basis of *Dixon* and *Waltreus*,

25

26     [1]While the Court granted the motion to amend and "incorporated"
   these newly exhausted claims into the first amended petition, it might
27  have been wiser to order that Petitioner file a second amended petition
   containing all five claims.   Regardless, the petition now before the
28  Court consists of the five claims discussed above.

1   which purportedly were independent state procedural grounds.   On

2   October 19, 2004, the Court denied the motion to dismiss in a minute

3   order, finding the limitations argument was frivolous and the

4   procedural default argument did meet the requirements of *Bennett v.*

5   *Mueller*, 322 F.3d 573, 581-85 (9th Cir. 2001).

6        On November 3, 2004, Respondent filed a Motion to Require a

7   Report and Recommendation on the basis that this court had improperly

8   decided the dispositive motion to dismiss.   This motion was granted

9   by District Judge A. Howard Matz on November 8, 2004.   On January 28,

10  2005, this writer reevaluated Respondent's motion to dismiss the

11  first amended petition.   Because of the complexity of the issues

12  presented by both the limitations and procedural default arguments,

13  the Court appointed counsel to represent Monarrez and afforded

14  Petitioner the opportunity to file a supplemental pleading addressing

15  the limitations and the procedural default issues.

16       On September 22, 2005, this Court issued a Report and

17  Recommendation finding that the petition was timely, that Petitioner

18  has adequately exhausted his claims, and that the Respondent had not

19  carried his burden of showing that the claimed procedural bar was

20  adequate to defeat federal review.   On November 2, 2005, Judge Matz

21  entered an order adopting the Report and Recommendation and denied

22  the motion to dismiss.   Respondent has now filed an answer on the

23  merits, and Petitioner has submitted a traverse. The matter is ready

24  for decision.

25

26  **II.   Statement of Facts**

27       Jesus Beltran, the victim of the shooting for which Petitioner

28  was convicted, was a young member of the Fullerton Tokers Town

1   ("FTT"), a criminal street gang.  Petitioner was also a FTT member.

2   A few weeks before the shooting, Beltran was at a party with

3   other FTT gang members, including his friend Octavio Nolasco.[2]  The

4   party was on Valencia Street, at the home of Nolasco's girlfriend.

5   (RT at 200, 247).   Petitioner and a few other FTT gang members

6   arrived by car and everyone shook hands except for Monarrez. (CT at

7   557-58).   Monarrez was 23 years old at the time, and had recently

8   been released from prison. (RT at 662).

9   Beltran made a comment about Monarrez to a friend, which the

10  latter overheard.  Monarrez told Beltran, "So, you think you're bad?

11  . . . You think you're crazy?" (RT at 272).  Monarrez hit Beltran and

12  in the fight that ensued, Beltran felt he got the better of Monarrez.

13  (CT at 561).   Beltran assumed Monarrez wanted to fight him because

14  Beltran was "disrespecting him, that he's not getting the respect,

15  what a veterano from prison should get." (CT at 568).  Two fellow FTT

16  gang members, Paul Acevedo and Modesto Marines jumped in to stop the

17  fight. (RT at 292, 318-19).  Monarrez then left the party. (RT at

18  342, CT at 564).

19  About a month later, on September 1, 1995, Beltran was walking

20  toward a payphone at the El Mercadito Market, at Lemon and Valencia

21  in Fullerton.   (RT at 24).  He encountered Jaime Alvarez, who was

22  also a member of the FTT gang. (RT at 127, 133).   During his

23  interview with police, Beltran stated that Monarrez and some others

24

25  [2] Following the shooting, police officers conducted taped
    interviews with Beltran and Nolasco. Nolasco described the events which
26  took place at the party. Beltran identified Petitioner as the
    assailant. At trial, both recanted their prior statements and claimed
27  that they could not remember the events in question. The prior
    statements were introduced into evidence. These facts are derived from
28  those statements.

1  approached and Monarrez asked Alvarez if he wanted to "go one-on-one"
2  and fight. (CT at 588). Alvarez was punched and got a bloody nose.
3  (RT at 349, 351-52). Monarrez then took out what appeared to be a
4  chrome .22 caliber automatic. (CT at 589-90). Monarrez held the gun
5  in his left hand and struck Beltran with his right. Beltran fell to
6  the ground. He tried to stand up and was kicked in the face. Beltran
7  tried to stand up again and was shot in the back. (RT at 369, 389,
8  394, 397). Alvarez saw that Beltran was bleeding and called 911.
9  Police and paramedics arrived shortly thereafter. (RT at 155, 157-
10 58).

11      On September 8, 1995, Fullerton police officers executed a
12 search warrant at Monarrez's home. (RT at 579-80). Inside Monarrez's
13 bedroom, the police recovered a notebook with FTT gang graffiti and
14 photo albums that contained similar FTT gang graffiti and family
15 pictures.

16      Fullerton Detective Anthony Sosnowski interviewed Beltran.
17 Beltran identified Monarrez as an FTT member and identified him in
18 a photo line-up. He also identified Monarrez as the shooter, but
19 stated that he did not want to participate in the prosecution of
20 Monarrez. (RT at 1122-23, 1125-26). Beltran stated that he feared
21 for his family's safety. (RT at 1128).

22      Nolasco was also interviewed by police. He stated that he was
23 present at the Valencia street party and thought Monarrez punched
24 Beltran in the face because he had misheard something that Beltran
25 said. Nolasco also tried to break up the fight but then someone
26 tried to hit him in the face. Beltran and Nolasco ran away. (RT at
27 600, 662, 664-66). According to Nolasco, Beltran and Nolasco also
28 got in a fight with Acevedo and Marines at a party the next night,

1  because they were angry with Beltran for being disrespectful to
2  Monarrez. (RT at 670-75).  Nolasco also stated that when he later
3  visited Beltran in the hospital, Beltran told him that he had been
4  shot by Monarrez. (RT at 675).

5      Beltran had been shot in the back near the spine.  The bullet
6  remained lodged in his back at the time of the trial almost four
7  years later. (RT at 197-98, 403). According to the prosecution,
8  Monarrez shot Beltran because Beltran had failed to accord him the
9  proper respect.  The defense, however, denied Monarrez was the
10 shooter and presented witnesses whose testimony suggested that a gun
11 of a different caliber than that claimed to be in Petitioner's
12 possession had been used to shoot Beltran. (RT at 1221, 1234-35,
13 1279-82, 1272-74).

14     Sosnowski testified as a gang expert at trial. (RT at 861-62).
15 Based on his experience and knowledge, he testified that FTT was a
16 criminal street gang within the meaning of California Penal Code §
17 186.22. (RT at 882-83).  Sosnowski testified that Monarrez was an FTT
18 member, based on the tattoos located on Monarrez's body and the photo
19 albums recovered at Monarrez's home, which included gang graffiti and
20 photos of people flashing gang signs. (RT at 908-12, 914).   In
21 addition, Sosnowski said that Monarrez continued his affiliation with
22 FTT while in prison and that when he left prison, Monarrez became an
23 active and respected "veterano" in the FTT gang. (RT at 938, 943).
24 He further stated that Monarrez shot Beltran because he believed that
25 Beltran did not show him sufficient respect and therefore Monarrez
26 committed the crime for the benefit of the FTT gang. (RT at 952-53).
27     In addition, Sosnowski explained the difference between FTT, a
28 criminal street gang, and EME, or the Mexican Mafia, a prison gang.

1  He described how EME exercises control over street gangs in the
2  community, including assaulting or killing those who "rat" on fellow
3  gang members. (RT 898-99, 901-02). Sosnowski noted the presence of
4  EME graffiti etched just outside the doors to the courtroom when
5  Beltran testified, and stated that it could cause a witness to be
6  fearful and intimidated. (RT at 903). Sosnowski also noted that an
7  FTT gang member sat in the courtroom while Beltran testified. (RT at
8  923-24, 930).

9

10  III. **Respondent's Procedural Defenses**

11      Respondent reasserts the same three procedural defenses that he
12  presented in his motion to dismiss the petition. These are that the
13  claims are unexhausted, that the petition was untimely, and that the
14  claims are subject to a procedural bar. These arguments were
15  rejected by District Judge A. Howard Matz on November 2, 2005, and
16  will not be reconsidered.

17

18  IV.  **Standard of Review**

19      Under the Antiterrorism and Effective Death Penalty Act of 1996
20  ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ
21  of habeas corpus to a state prisoner on a claim that was decided on
22  the merits in state court only if the state court's decision was
23  "contrary to, or involved an unreasonable application of, clearly
24  established Federal law, as determined by the Supreme Court of the
25  United States" or if the ruling was "based on an unreasonable
26  determination of the facts in light of the evidence presented."
27      A state court decision is "contrary to" clearly established
28  federal law if the state court failed to apply the correct

8

1 controlling authority from the Supreme Court. *Williams v. Taylor*, 529
2 U.S. 362, 405-06 (2000).   The Supreme Court has explained that a
3 decision is contrary to clearly established federal law if the state
4 court "applies a rule that contradicts the governing law set forth
5 in [the Supreme Court's] cases" or if it "confronts a set of facts
6 that are materially indistinguishable from a decision of this Court
7 and nevertheless arrives at a result different from our precedent."
8 *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at
9 405-06).   A state court need not cite or even be aware of Supreme
10 Court precedents, "so long as neither the reasoning nor the result
11 of the state-court decision contradicts them." *Mitchell v. Esparza*,
12 540 U.S. 12, 16 (2003) (citing *Packer*, 537 U.S. at 7).

13     A state court decision involves an "unreasonable application of"
14 clearly established federal law if the state court identifies the
15 correct governing legal principle from the decisions of the Supreme
16 Court, but unreasonably applies that principle to the facts of the
17 case. *Williams,* 529 U.S. at 407-08, 413.   Under this standard, a
18 habeas court may not issue the writ simply because it concludes "in
19 its independent judgment" that the state court decision is incorrect
20 or erroneous. *Williams*, 529 U.S. at 410, 412; *Woodford v. Visciotti*,
21 537 U.S. 19, 24-25 (2002).   The reviewing court must find that the
22 state court's application of clearly established law was objectively
23 unreasonable. *Williams*, 529 U.S. at 409.

24     The California Supreme Court denied review in this case.   When
25 the California Supreme Court has summarily denied a claim, without
26 giving a rationale, this is considered a denial "on the merits," and
27 is presumed to rest on grounds articulated by a lower court in its
28 written opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-806 (1991);

1 *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

2 Thus, a reviewing court may "look through" the unexplained summary

3 denial to a lower state court's reasoned decision.

4     Here, the last reasoned decision by a state court was the

5 opinion of the California Court of Appeal of November 6, 2001. *See*

6 *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).  The court

7 of appeal only addressed the issues related to the testimony of the

8 prosecution's gang expert about the Mexican Mafia and the Mexican

9 Mafia graffiti at the court house.  Therefore, with the exception of

10 this issue, there is not a reasoned decision addressing Petitioner's

11 claims.  When there is no reasoned state court decision addressing

12 certain claims in a petition, this Court must conduct "an independent

13 review of the record" to determine whether the state's decision was

14 an objectively unreasonable application of Supreme Court precedent.

15 *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

16

17 **IV. Discussion and Analysis**

18     **A.**   **The Evidence Was Sufficient To the Jury's Finding of**

19 **Premediation and Deliberation As Well As Great Bodily Injury**

20     Petitioner asserts that there was insufficient evidence to

21 support a finding of (1) premeditation and deliberation or (2) great

22 bodily injury.  The Court will address each of these contentions in

23 turn.

24     The legal standard for evaluating sufficiency of the evidence

25 claims is clearly established.  *Jackson v. Virginia*, 443 U.S. 307,

26 99 S. Ct. 2781 (1979).  "[T]he applicant is entitled to habeas corpus

27 relief if it is found that upon the record evidence adduced at the

28 trial no rational trier of fact could have found proof of guilt

1   beyond a reasonable doubt." *Id.* at 324; *see also Turner v. Calderon*,

2   281 F.3d 851, 881-82 (9th Cir. 2002).  The reviewing court's task is,

3   therefore, not to determine whether the evidence adduced at trial

4   established guilt beyond a reasonable doubt but rather, after viewing

5   the evidence in the light most favorable to the prosecution, whether

6   any rational trier of fact could have found the essential elements

7   beyond a reasonable doubt.  *Jackson*, 443 U.S. at 318-19; *Turner*, 281

8   F.3d at 881-82.    This  standard  must  be  applied  with  explicit

9   reference to the substantive elements of the criminal offense as

10  defined by state law.  *Jackson*, 443 U.S. at 324 n.16.  Moreover, on

11  habeas review the court must apply the *Jackson* standard "with an

12  additional layer of deference."  *Juan H. v. Allen*, 408 F.3d 1262,

13  1274 (9th Cir. 2005).  The court must ask "whether the decision of

14  the California Court of Appeal reflected an 'unreasonable application

15  of' *Jackson* . . . to the facts of this case." *Id.* at 1275.

16                  **1. Premeditation and Deliberation**

17       Petitioner claims that there was no evidence of any "planning"

18  activity as required by California homicide law.  Indeed, he claims

19  that  there  was  virtually  no  evidence  relating  to  Petitioner's

20  activities prior to his meeting with Beltran, and although Beltran

21  said he saw Petitioner at a party earlier that evening, that was well

22  before the shooting. Petitioner claims that there was no evidence

23  suggesting that he had followed Beltran or otherwise sought him out.

24  In addition, Petitioner claims that the evidence of motive was weak

25  and that at most, the evidence shows that Petitioner was trying to

26  scare Beltran and shot at him unintentionally.  Petitioner contends

27  that the nature of the forensic evidence disproves premeditation

28  because only a bullet fragment was found in Beltran, not a whole

                                      11

1  bullet, and according to the forensic pathologist, the most likely

2  explanation is that the bullet was not shot directly into Beltran.

3  Indeed, the pathologist stated that the evidence was inconsistent

4  with a direct shot. (RT at 1278-79, 1290) (Petitioner's Traverse as

5  12). Thus, Petitioner claims that the medical and scientific evidence

6  supports the contention that Petitioner was only trying to scare

7  Beltran, and that there was no evidence to support a finding of

8  premeditation and deliberation. (Petitioner's traverse at 12).

9  Under California law, premeditation and deliberation may be

10  found where the act of killing occurred as the result of preexisting

11  reflection rather than unconsidered or rash impulse. *People v.*

12  *Manriquez*, 37 Cal.4th 547, 36 Cal.Rptr.3d 340 (Cal. 2005). However,

13  "[t]he process of premeditation and deliberation does not require any

14  extended period of time. The true test is not the duration of time

15  as much as it is the extent of the reflection. Thoughts may follow

16  each other with great rapidity and cold, calculated judgment may be

17  arrived at quickly...." *Id.* at 366 (internal citations omitted). *See*

18  *also People v. Anderson*, 70 Cal.2d 15, 73 Cal.Rptr. 550 (Cal.

19  1968)(identifying three categories of evidence relevant to resolving

20  the issue of premeditation and deliberation: planning activity,

21  motive, and manner of killing).

22  Petitioner did not raise this issue in the California Court of

23  Appeal, and thus the Court addresses the objective reasonableness of

24  the Supreme Court's silent rejection of the claim independently. This

25  Court finds that a rational fact finder could have found the

26  essential elements of premeditation and deliberation beyond a

27  reasonable doubt; i.e., that Petitioner shot Beltran as a result of

28  preexisting reflection and calculated judgement.  The evidence shows

1  an ongoing dispute between Beltran and Petitioner from which the jury

2  could have reasonably concluded that Petitioner decided, after

3  several altercations, to shoot Beltran for displaying a "lack of

4  respect".   Petitioner's reliance on the absence of evidence of

5  planning activity is without merit. California law does not require

6  any specific duration of time for planning or reflection.  A jury

7  must evaluate the facts and decide whether the decision to kill was

8  a calculated judgement.   The jury so found in this case, and this

9  finding had ample support in the record.  Petitioner's claim does not

10  warrant federal habeas relief.

11         **2.   Great Bodily Injury**

12        Petitioner also claims that there was insufficient evidence that

13  he his conduct resulted in great bodily injury, despite Beltran

14  having been shot in the back.  Petitioner argues that the prosecution

15  presented no medical evidence about the extent of Beltran's injuries.

16  The only evidence came from Beltran himself who explained that the

17  bullet remained lodged in his back and sometimes caused him pain. (RT

18  at 403). During the defense case, Dr. Fukumoto confirmed that a

19  bullet fragment was lodged in Beltran's back, but did not elaborate

20  on the extent of any injury.

21        Under California law, a finding of great bodily injury must be

22  supported by evidence that the person suffered "significant or

23  substantial physical injury." Cal. Penal Code § 12022.7(e)(West

24  1995).  Petitioner asserts that the "paucity of evidence" failed to

25  establish a significant or substantial physical injury beyond a

26  reasonable doubt, and therefore the finding violates due process

27  under *Jackson*, 443 U.S. at 324.

28  \\

1  As noted, Beltran was shot in the back, near the spine. The
2  bullet remained in his back almost four years later. Under these
3  facts, the jury reasonably found, using their basic common sense,
4  that Beltran suffered great bodily injury. Thus, viewing the
5  evidence in the light most favorable to the prosecution, a rational
6  trier of fact could have found the essential elements of great bodily
7  injury beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19.
8  Habeas relief is not warranted.

9      **B.   Petitioner's Due Process Rights Were Not Violated by the**
10          **Admission of Evidence of Uncharged Conduct and Gang-Related**
11          **Activities**

12      Petitioner claims that his due process rights were violated by
13  the admission of evidence that the day before this shooting, in an
14  unrelated incident, Petitioner had possessed a chrome plated handgun;
15  that Petitioner had a tattoo of a man with a large gun on his body;
16  and that there was Mexican Mafia graffiti outside the courtroom.
17  (Petitioner's Traverse at 13). The Court will address each of these
18  evidentiary issues in turn below.

19      On habeas review, a federal court will not consider whether a
20  state court misapplied state evidence law unless the application
21  violates a constitutional right. *Estelle v. McGuire*, 502 U.S. 62
22  (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Here, Petitioner
23  has alleged a violation of due process. (Pet. at 5.) Admission of
24  evidence violates due process if: (1) "there are no permissible
25  inferences the jury may draw from the evidence," and (2) the evidence
26  is "of such quality as necessarily prevents a fair trial." *Jammal v.*
27  *Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

28  \\

1          **1.   The Handgun Identification Evidence**

2          Petitioner complains that the trial judge inappropriately

3    allowed Lori Oveson, Petitioner's ex-girlfriend, to testify that on

4    the day before the shooting of Beltran, she saw Petitioner with a

5    chrome handgun like that of a police officer's gun, a .357 Magnum

6    with a four-inch barrel. (RT at 592-93, 1274).  The trial court

7    admitted this testimony over objection, finding that it was relevant

8    as Beltran had described seeing the shooter with a chrome handgun,

9    and thus the evidence bore on Petitioner's identity as the shooter.

10   (RT at 72). Petitioner argues, however, that this testimony had no

11   evidentiary value because the gun Oveson saw could not have been the

12   gun that inflicted Beltran's wounds.  The bullet fragment in Beltran

13   was inconsistent with that from a .357 Magnum. (RT at 1279).

14         Petitioner's argument is without merit.  The evidence was

15   relevant, probative and admissible under California Law.  Cal. Evid.

16   Code §§ 210, 351.  Beltran identified Petitioner as having a chrome

17   handgun, and Oveson stated that Petitioner had a chrome handgun the

18   day before the shooting.  The jury was informed of the discrepancies

19   between the description of the gun and the bullet fragment, and came

20   to its own conclusion regarding what weight to give Oveson's

21   description of the gun.  Admission of this evidence did not violate

22   due process because there are permissible inferences that the jury

23   may draw from the evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 920

24   (9th Cir. 1991).

25         **2.   The Mexican Mafia Graffiti**

26         Petitioner further alleges that the admission of the testimony

27   of Detective Sosnowski, explaining the activities of the Mexican

28   Mafia prison gang, and the fact that Mexican Mafia graffiti was

                                  15

1   etched   into   the   wood   outside   the   courtroom,   violated   his
2   Constitutional rights.   Petitioner claims that there was no evidence
3   connecting him to the Mexican Mafia or to the Mexican Mafia graffiti.
4   Petitioner notes that Detective Sosnowski did not know when or how
5   the   graffiti   was   placed   in   the   courthouse,   and   Beltran,   the
6   speculative target of the implied threat, did not see it.   Some other
7   person told him about it. (RT at 416-17, 903).   There was no evidence
8   that Alvarez or Nolasco knew of its existence.

9        The   California   Court   of   Appeal   addressed   this   issue   in   its
10  written opinion affirming the convictions.   The state court found
11  that "Sosnowski's expertise assisted the jury in understanding a
12  possible reason why both Beltran and Alvarez would recant their
13  earlier statements to the police, and was highly probative on issues
14  of witness credibility." *People v. Juan Heredia Monarrez*, Case No
15  G025919 (Cal. Ct. App., Div. Three, November 6, 2001) (unpublished).

16       The court of appeal's decision was not contrary to, nor involved
17  an unreasonable application of, clearly established Federal law, as
18  determined by the Supreme Court of the United States. 28 U.S.C. §
19  2254(d)(1).   The evidence was relevant as to the witnesses state of
20  mind, and was not unconstitutionally prejudicial.   No habeas relief
21  is warranted on this claim.

22            **3.   The Gun Tattoo**

23       Petitioner also challenges the testimony of Detective Sosnowski
24  about a tattoo on Petitioner's back showing an individual holding a
25  large gun. Sosnowski   stated   that   this   showed   Petitioner   had   a
26  "willingness   to   participate   in   a   violent   gang   lifestyle"   and   an
27  affinity for violence.   (RT at 906, 910-11).   Petitioner asserts that
28  reference to the tattoo was a "ruse to tar Petitioner as a violent

16

gang member who willingly and indiscriminately used firearms to achieve his criminal ends." (Petitioner's Traverse at 15). Petitioner complains that this was part of a series of irrelevant and prejudicial gang references that in total denied Petitioner his right to due process. (Petitioner's Traverse at 15).

This claim is also without merit. The gang evidence was relevant, since the prosecution's theory was aimed at demonstrating that a "veterano" gang member shot a younger member who did not show him the proper respect. The prosecution argued that the victim and others initially cooperated with the police and then later recanted, based on fear of retaliation by the gang. The tattoo was part of the evidence establishing Petitioner's involvement with the gang.

The admission of this evidence did not violate due process because there were permissible inferences the jury could have drawn from the evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In addition, in light of all the other evidence demonstrating Petitioner's involvement in the gang, the admission of the photograph was not "so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977 (9th Cir. 1999).

C.   **The Exclusion of Beltran's Medical Records Did Not Violate Petitioner's Due Process Rights**

Finally, Petitioner asserts that the trial court erred when it excluded the victim's medical records, because those records allegedly contradicted the great bodily injury allegation and the assertion of premeditation. Petitioner contends that the exclusion of this evidence violated his due process rights, his right to present a defense, and his right to call witnesses.

\\

1    Petitioner states that this evidence was important for several
2    reasons.  Given the failure of Beltran and Alvarez to affirm under
3    oath any of their prior statements, there was, according to
4    Petitioner, a very real dispute as to how Beltran was shot.  It was
5    therefore critical for Petitioner to be able to present evidence that
6    contradicted Beltran's earlier account.  He claims that the medical
7    records did so by calling into question the type of handgun that had
8    been used.  According to Petitioner, the radiologist's report showed
9    that something smaller could have been used to shoot Beltran, like
10   a pellet gun.   Petitioner wanted to introduce the radiologist's
11   report indicating that the fragment in Beltran's back was about 3 by
12   5 millimeters in size. However, the trial court found the medical
13   records to be unreliable hearsay, contradicted by all of the medical
14   witnesses who testified, and not falling within the business records
15   exception.  (RT at 1263-65, 1254).

16   As previously noted, violations of state evidentiary law are not
17   cognizable in a federal habeas corpus petition.  *Estelle v. McGuire*,
18   502 U.S. at 67-68.   Thus, a habeas corpus petitioner may not
19   challenge an evidentiary ruling on the grounds that it violated the
20   state's evidence code.  *Jammal v. Van de Kamp*, 926 F.2d at 919-20.
21   Rather, an evidentiary ruling may be challenged only if it rendered
22   the trial so fundamentally unfair so as to violate due process.
23   *Leavitt v. Arave*, 383 F.3d 805, 829 (9th Cir. 2004).

24   When deciding whether an evidentiary ruling which excludes
25   defense evidence violates due process, the habeas court must "balance
26   the importance of the evidence against the state interest in
27   exclusion." *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983),
28   cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984).  To

1  determine if the exclusion of evidence reaches constitutional
2  proportions, the court considers five factors: (1) the probative
3  value of the excluded evidence on the central issue; (2) its
4  reliability; (3) whether it is capable of evaluation by the trier of
5  fact; (4) whether it is the sole evidence on the issue or merely
6  cumulative; and (5) whether it constitutes a major part of the
7  attempted defense. *See Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir.
8  1990). After reviewing these factors, the habeas court must balance
9  the importance of the evidence against the state's interest in
10 excluding it. *Id.* Moreover, trial type errors do not give rise to
11 habeas relief unless the error alleged "had a substantial and
12 injurious effect or influence in determining the jury's verdict."
13 *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d
14 353 (1993).

15        This issue was not presented to the California Court of Appeal
16 and thus there is no written decision by the state court addressing
17 the issue.  Weighing the factors identified above, the Court finds
18 that there was no due process violation.  The probative value of the
19 excluded evidence on the central issue was not significant.   The
20 issue of the nature of the bullet fragment and how it got into
21 Beltran was thoroughly explored at trial, and the jury had plenty of
22 evidence with which to assess the defense's contentions.   The
23 defense's own expert conceded that the fragment inside of Beltran's
24 body was consistent with either a .22 or .25 caliber weapon, the same
25 type described by Beltran. (RT at 1283).  The prosecution presented
26 evidence that the Petitioner possessed a chrome handgun the day
27 before the shooting, and Beltran identified the weapon he was shot
28 with as a chrome handgun. (CT at 589-90 (Beltran); RT at 1272-74

1  (Oveson)).

2      Additionally, the trial court found that the radiologist's

3  report was both inadmissable as hearsay and unreliable, stating that

4  it would be unfair to introduce medical statements and opinions

5  (about which there was much disagreement by the physicians who did

6  testify) without the prosecution having the opportunity to examine

7  the person who prepared the radiology report. (RT at 1227).   The

8  trial court did agree, however, that the defense could present

9  testimony from a percipient witness, which would be the more reliable

10  evidence on this issue. (RT at 1254-65, 1269-70).   Petitioner chose

11  not to do so, perhaps because no other experts who examined the x-

12  rays agreed with the original radiologist's determination of fragment

13  size.

14      In any event, the Court defers to the state court's analysis of

15  California evidentiary rules and the reliability of the radiologist's

16  report.   The Court additionally finds, for the reasons stated above,

17  that exclusion of the records did not prevent the Petitioner from

18  presenting his defense.   Other evidence on this issue sufficed

19  because the medical reports were not the sole evidence on the issue,

20  nor were the reports a vital part of the defense.   The jury had

21  sufficient evidence to evaluate the issues related to the gun and

22  bullet fragment.   Consequently, the Court finds that exclusion of

23  Beltran's medical records was not constitutional error.

24  \\

25  \\

26  \\

27  \\

28  \\

## III. <u>Conclusion</u>

For the reasons stated above, it is recommended that the Court accept and adopt the findings and recommendations herein and that the petition for habeas corpus should be **DENIED**.

Dated: April 13, 2006

_____
Marc L. Goldman
United States Magistrate Judge